IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| JOSHUA M. SARCO, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Case No. 5:19cv86 |
| v. | ) | |
| | ) | |
| 5 STAR FINANCIAL, LLC, | ) | |
| (d/b/a "ARMED FORCES | ) | |
| BENEFIT ASSOC."), | ) | |
| | ) | By: Michael F. Urbanski |
| Defendant. | ) | Chief United States District Judge |

## MEMORANDUM OPINION

This matter is before the court on defendant 5 Star Financial, LLC, doing business as

Armed Forces Benefit Association's ("AFBA"), motion to dismiss Plaintiff Joshua M. Sarco's

Amended Complaint for failure to state a claim of gender stereotype nonconformity

discrimination, sexual orientation discrimination, or hostile work environment under Title VII

of the Civil Rights Act of 1964 ("Title VII"). ECF No. 19. AFBA claims that both the gender

stereotype nonconformity and the sexual orientation discrimination claim should be dismissed

because Title VII does not protect against such claims of discrimination, and in the alternative,

because Sarco fails to sufficiently plead those claims. Further, AFBA claims that the Amended

Complaint fails to allege facts sufficient to constitute a hostile work environment. Sarco

responded, arguing that he was discriminated against on the basis of gender stereotypes, that

Title VII can be read to cover sexual orientation, and that his allegations rise to the level of a

hostile work environment. ECF No. 25. AFBA replied to Sarco's response, ECF No. 30, and

the court heard argument on the motion to dismiss on April 14, 2020.

Upon agreement by counsel, the court indicated it would withhold judgment on the motion to dismiss pending resolution of <u>Bostock v. Clayton County</u>, 140 S. Ct. 1731 (2020), a case before the Supreme Court that would resolve the question of whether Title VII covered sexual orientation discrimination. On June 15, 2020, the Supreme Court concluded that Title VII encompasses discrimination on the basis of sexual orientation. <u>Id.</u> at 1754.

Having reviewed the Supreme Court's ruling in <u>Bostock</u>, the motions filed in this case, and the relevant case law in the Fourth Circuit, the court **GRANTS in part** and **DENIES in part** AFBA's motion to dismiss. Sarco will be permitted to proceed on his gender stereotype and sexual orientation discrimination claims under Title VII. However, the court **DISMISSES with prejudice** his hostile work environment claim.

## I.

Sarco alleges that he was harassed by two AFBA Vice Presidents, Tad Shuey and Amy Wenger, throughout his employment. Am. Compl., ECF No. 17, at 3. He raises allegations of gender stereotype and sexual orientation discrimination and hostile work environment.

Sarco was hired by AFBA, a Virginia life insurance company, on or about August 17, 2015, as a customer service representative. <u>Id.</u> at 2. Upon hiring, he signed the EEO-1 Data Form, which assured him that AFBA was an equal opportunity employer and did not discriminate on the basis of race, color, religion, gender, age, national origin, disability, sexual orientation, or any other classification protected by federal, state, or local law. <u>Id.</u>; EEO-1 Data Form Exhibit, ECF No. 17-1.

Sarco explains that he was hired to interact with military members and their families by phone to answer questions about AFBA benefits and services, a typical set of duties for AFBA

2

customer service representatives. ECF No. 17, at 2-3. At some point, he also was tasked with verification and correction of scanned benefit applications, which began consuming approximately 90% of his daily workload. Id. Sarco was the only staff member tasked with this responsibility, and despite the increase in workload, his performance was deemed more than satisfactory. Id. at 3. Sarco's first performance evaluation was completed by Wenger on December 29, 2015, and rated him 5/5, or "excellent," describing him as "knowledgeable," "proactive," and an employee who "accomplishes an outstanding volume of work," and "strives to accomplish tasks thoroughly and accurately." ECF No. 17-1, at 3.

Sarco describes the AFBA office as small, consisting of about 15 employees, with low turnover and no known instances of employee termination for inadequate performance for the several years preceding his term of employment. ECF No. 17, at 3. Sarco notes that he only knows of three employees who left the company for non-performance related reasons during his tenure with AFBA. Id. Given the intimate workplace environment due to AFBA's relatively small size, he says he is "confident" everyone in the office was aware he identified as homosexual "due to his openness about his orientation, as well as his effeminate mannerisms and clothing, long hair, flamboyant apparel, and a high-pitched voice which resulted in some clients presuming he was female on the phone." Id.

Sarco describes instances of perceived discrimination based on his gender nonconformity and sexual orientation. He claims Shuey and Wenger denigrated him continuously for his sexuality and gender nonconforming presentation, because, he believes, of "their religious beliefs against and preconceptions concerning homosexuality." Id. at 4. In support, Sarco cites instances of being told that he did not care about the military because of

his sexuality, which Sarco believes arose out of negative assumptions about homosexual individuals. Id. He recalls having his boyfriend denied an interview, despite possessing the requisite qualifications for the role, because of his sexuality. Id. Sarco recalls an instance during which Shuey and Wenger declared that they served Chick-fil-A at an office meeting "because of 'what the company stands for,' meaning the fast food chain's noted support of anti-LGBTQ causes." Id. at 5. He also claims his sister-in-law Kelly Sarco, a former employee of AFBA, quit her position because of "inappropriate and bigoted" statements Wenger made about her husband Daniel Sarco. Id. at 4. Wenger disapproved of the relationship because Daniel Sarco was not a Christian and told Kelly Sarco that she would never forgive her for being in the relationship. Id. Sarco claims current and former AFBA employees witnessed the discrimination and would be willing to testify on his behalf. Id.

Sarco also maintains that:

> Shuey and/or Wenger repeatedly applied or interpreted office rules differently when concerning him or his brother, such as: (a) telling him to close his window despite others having theirs open; (b) requiring his customer service forms be monitored and double-checked for months along with those completed by recently hired employees, despite Sarco having been employed for years and without explanation; (c) directly and in capital letters singling out articles of clothing which only Sarco would wear to the office as being prohibited during AFBA executive visits to the Staunton office; (d) leaving Sarco alone in the office to answer customer calls for long periods of time; (e) trying to convince Sarco and his brother to take fewer than office standard two bereavement days for the death of their father; (f) demanding Sarco and his brother not receive personal mail at the office, despite others being able to without warning; and (g) Shuey appeared reticent to use the bathroom if he knew Sarco was inside.

Id. at 5. Sarco also details an instance in which his manager, Ashley Geary, the Head of Customer Service at AFBA, submitted an application for Sarco to gain remote access to work, which was rejected without reason. Id. at 4. He states this was a routine request at the time.

Sarco describes his eventual termination from the company as beginning with an unexpected warning from Shuey in December 2018 that he needed to improve his work performance. Id. at 5. He was told that he was missing too many work calls, to which he explained that his unique responsibility of verifying customer applications took much of his time, but he promised to try to improve regardless. Id. at 5. Given Sarco's alleged unsatisfactory performance, Shuey told him that he would be scheduled for a development counseling session on some date between Christmas and New Year's Eve 2018. Id. at 6. The session never transpired. Id. Even without the benefit of this development session, Sarco claims he showed substantial improvement, citing information provided to him by Ronald Custer, IT Director at AFBA, which reflects that Sarco was ranked highest in total volume of customer calls directed to his extension and second highest in calls answered. Id. Despite demonstrating substantial improvement, Shuey told Sarco in January 2019 that his performance "was not even close to being good enough" at a meeting also attended by Wenger, Michael Wong, Senior Vice President of AFBA, and Michael Moser, Senior Vice President and General Counsel of AFBA. Id. Shortly thereafter, he received a letter from A. Jeanine Hoover, Vice President of Human Resources at AFBA's Arlington, Virginia office, terminating his employment. Id.; Termination Letter, ECF No. 13-1, at 4.

## II.

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. at 679 (internal citation omitted); see also Simmons v. United Mortg. & Loan Inv., 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (internal quotations and emphasis omitted).

A court must consider all well-pleaded allegations in a complaint as true, see Albright v. Oliver, 510 U.S. 266, 268 (1994), and must construe factual allegations in the light most favorable to the plaintiff. See Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005). Nevertheless, a court is not required "to accept as true a legal conclusion couched as a factual allegation," Papasan v. Allain, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, see United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (internal quotation omitted). "Thus, [ ] 'in reviewing a motion to dismiss an action pursuant to Rule

12(b)(6), a court must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level.'" Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Andrew v. Clark, 561 F.3d 261, 266 (4th Cir. 2009)).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and 'the documents attached or incorporated into the complaint.'" Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 606 (4th Cir. 2015) (quoting E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011)). However, the court may consider documents outside of the Amended Complaint if they are "integral to the [c]omplaint" and there is no dispute regarding their authenticity. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). A document is "integral to the [c]omplaint" where the Amended Complaint "relies heavily upon its terms and effect . . . ." Id. (quoting Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002)).

### III.

AFBA challenges the sufficiency of Sarco's pleading as to Count One, gender stereotype nonconformity discrimination; Count Two, sexual orientation discrimination; and Count Three, hostile work environment. AFBA alleges that Title VII does not extend to sexual orientation discrimination, that Sarco cannot bootstrap a sexual orientation claim into a gender stereotype claim, that he fails to plead substantive facts sufficient to give rise to both claims, that he is time barred from relying on certain acts supporting any of his claims, and that he is administratively barred from bringing a hostile work environment claim as he did not explicitly

allege a hostile work environment claim in his Equal Employment Opportunity Commission ("EEOC") charge. The court addresses each of these arguments in turn.

## A.

AFBA argues that each of Sarco's claims of discrimination should be dismissed as being outside the scope of Title VII's protection. First, AFBA argues that Count One, the gender stereotype nonconformity discrimination claim, is an attempt to bootstrap an impermissible sexual orientation discrimination claim into a gender stereotype discrimination claim and must be dismissed. Second, it argues that Fourth Circuit precedent forecloses a sexual orientation claim and so Count Two's claim must be dismissed. Third, it argues that Count Three's hostile work environment claim must be dismissed because, despite his strenuously argued stance that his coworkers and superiors were hostile to his failure to comport with traditionally conceived masculine attributes, Sarco is simply attempting to shoehorn a sexual orientation claim into a sex discrimination claim.

As discussed above, this case was held in abeyance pending resolution of Bostock v. Clayton County, Georgia, 140 S.Ct. 1731 (2020). Bostock was decided on June 15, 2020, and applying its holding to Sarco's case, this court finds that Sarco may proceed on his cause of action for discrimination based on his status as a homosexual.

In Bostock, the Court looked at three Courts of Appeals cases that examined whether a person's status as a homosexual or transgender person was protected under Title VII: Bostock v. Clayton Cty. Bd. of Commissioners, 723 F. App'x 694 (11th Cir. 2018); Zarda v. Altitude Express, Inc., 883 F.3d 100, 107 (2d Cir. 2018); and Equal Employment Opportunity Comm'n v. R.G. & G.R. Harris Funeral Homes, Inc., 884 F.3d 560, 566 (6th Cir. 2018). In

each case, "[a]n employer fired a long-time employee shortly after the employee revealed that he or she [was] homosexual or transgender—and allegedly for no reason other than the employee's homosexuality or transgender status." Bostock, 140 S.Ct. at 1737.

The Court began its analysis by noting that Title VII prohibits employers from taking certain actions "because of" sex and that the ordinary meaning of "because of" is "by reason of" or "on account of." Id. at 1739 (internal quotations and citations omitted). Thus, the "because of" test incorporates the simple and traditional standard of but-for causation. Id. "That form of causation is established whenever a particular outcome would not have happened 'but for' the purported cause." Id. The court next looked at the meaning of "discriminate," finding it means to intentionally treat an individual worse than others who are similarly situated. Id. at 1740. "So, taken together, an employer who intentionally treats a person worse because of sex—such as firing the person for actions or attributes it would tolerate in an individual of another sex—discriminates against that person in violation of Title VII." Id. The Court then noted that Title VII applies to individuals rather than groups and concluded that an employer violates Title VII when it intentionally fires an individual based in part on sex. "Title VII's message is 'simple but momentous': An individual employee's sex is 'not relevant to the selection, evaluation, or compensation of employees.'" Id. at 1741 (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 239 (1989)).

The Court next applied the Title VII framework to discrimination based on homosexuality or transgender status and concluded that an individual's homosexuality or transgender status is not relevant to employment decisions "because it is impossible to

discriminate against a person for being homosexual or transgender without discriminating against that individual based on sex." Id.

> Consider, for example, an employer with two employees, both of whom are attracted to men. The two individuals are, to the employer's mind, materially identical in all respects, except that one is a man and the other a woman. If the employer fires the male employee for no reason other than the fact he is attracted to men, the employer discriminates against him for traits or actions it tolerates in his female colleague. Put differently, the employer intentionally singles out an employee to fire based in part on the employee's sex, and the affected employee's sex is a but-for cause of his discharge. Or take an employer who fires a transgender person who was identified as a male at birth but who now identifies as a female. If the employer retains an otherwise identical employee who was identified as female at birth, the employer intentionally penalizes a person identified as male at birth for traits or actions that it tolerates in an employee identified as female at birth. Again, the individual employee's sex plays an unmistakable and impermissible role in the discharge decision.

Id. at 1741–42. The court concluded that "[i]n Title VII, Congress adopted broad language making it illegal for an employer to rely on an employee's sex when deciding to fire that employee" and a necessary consequence of that legislative choice is that "an employer who fires an individual merely for being gay or transgender defies the law." Id. at 1754.

Applying Bostock to Sarco's case, this court rejects AFBA's argument that Title VII does not cover sexual orientation and will permit Sarco to proceed with his sex discrimination claim under both theories of liability: (1) gender stereotype nonconformity discrimination and (2) sexual orientation discrimination.

**B.**

Next, AFBA argues that Sarco's gender nonconformity and sexual orientation discrimination claims must be dismissed as insufficiently pled. In support, it claims that Sarco

cannot rely on activity that occurred prior to August 15, 2018, because such claims would be time barred as occurring more than 300 days prior to his filing of the EEOC charge. Additionally, it claims that with or without the activity that occurred prior to August 15, 2018, Sarco's Amended Complaint fails to tie any adverse action to his gender nonconformity and sexual orientation.

First, the court finds that in arguing that Sarco is time barred from introducing activity that occurred more than 300 days prior to the filing of his EEOC charge, AFBA misreads the law. In Virginia, which has a state deferral agency, Title VII requires an employee to file a charge with the EEOC within 300 days after the occurrence of the unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). Sarco filed his EEOC charge on June 11, 2019, and so AFBA claims any alleged actions that occurred prior to August 15, 2018 cannot be used to support the Title VII claims. However, the Supreme Court forecloses this argument:

> The timely filing provision only requires that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened. It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). In other words, "[i]f an incident occurred more than 300 days before the filing of the plaintiff's EEOC charge, it can be raised in a subsequent lawsuit only if it were part of a continuing violation, and at least one act in that violation occurred within the 300–day statute of limitations." Balas v. Huntington Ingalls Indus., Inc., No. 2:11CV347, 2011 WL 4478864, at *3 (E.D. Va. Sept. 26, 2011) (citing Nat'l R.R., 536 U.S. at 117); see also Guessous v. Fairview Prop. Invs., LLC, 828 F.3d 208,

222 (4th Cir. 2016). In a Title VII case alleging hostile work environment and wrongful termination, this court has held that because the plaintiff had raised some allegations within the statutory time period, he could also raise allegations about a pattern of conduct that occurred in the several months prior to the statutory period. Broome v. Iron Tiger Logistics, No. 7:17CV444, 2019 WL 6719495, at *8 (W.D. Va. Dec. 10, 2019).

Therefore, even if the conduct Sarco alleges outside of the statutory period "cannot stand as separate charges of discrimination for which [AFBA] may be liable, [it] might be admissible as evidence at trial to support [a] properly asserted sex discrimination claim." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (citing United Air Lines, Inc. v. Evans, 431 U.S. 553, 558 (1977)).

## C.

Second, the court disagrees with AFBA that Sarco's gender stereotype nonconformity and sexual orientation discrimination claims fail to pass muster under the Rule 12(b)(6) standard. Counts One and Two of the Amended Complaint amount to separate theories of liability in bringing a single Title VII sex discrimination cause of action. Title VII prohibits employers from discharging or otherwise discriminating against any individual "because of such individual's. . . race, color, religion, sex or national origin." 42 U.S.C.A. § 2000e-2(a). Title VII prohibits intentional discrimination, known as disparate treatment, which occurs "where an employer has treated a particular person less favorably than others because of a protected trait." Ricci v. DeStefano, 557 U.S. 557, 577 (2009) (internal quotations omitted). "The central focus of a disparate treatment claim is whether a protected characteristic of the employee motivated the employment action taken by the employer." Barnett v. Tech. Int'l, Inc., 1 F.

Supp. 2d 572, 577 (E.D. Va. 1998) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)); see also Tex. Dep't of Cmty. Affs. v. Burdine, 450 U.S. 248, 252–56 (1981).

When stating a claim under Title VII, "a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss," but the factual allegations must "raise a right to relief above the speculative level." Coleman v. Md. Ct of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (first citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510–15 (2002); then quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). This burden is met where the plaintiff "allege[s] facts to satisfy the elements of a cause of action created by [the relevant] statute." McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 584-85 (4th Cir. 2015) (holding that the district court erred in applying a more rigorous sufficiency of the evidence framework when analyzing the sufficiency of an employment discrimination complaint at the motion to dismiss stage). Absent direct evidence, the elements of a Title VII discrimination claim are: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman, 626 F.3d at 190.

AFBA's challenge to the sufficiency of Sarco's complaint is based principally on the theory that he fails to establish a nexus between the alleged adverse employment action and his membership in a protected class. In his two counts alleging sex discrimination, he claims he faced adverse employment action in the form of animus and disparate application of office policies, culminating in his eventual termination, and that the actions were at least in part motivated by (1) the fact of his nonconformance with male gender stereotypes, in addition to

13

or alternatively, (2) his sexual orientation. For each count to survive a motion to dismiss, he must plead facts sufficient to support the theory of sex discrimination liability under Title VII.

Count One of Sarco's Amended Complaint sufficiently pleads facts that support his theory of gender stereotype nonconformity discrimination. The operative theory that a homosexual, gender nonconforming man relies on to bring a sex discrimination claim is that he was penalized for failing to meet gender stereotypes. See Price Waterhouse, 490 U.S. at 251-255 ("In forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.") (quotations omitted); Finkle v. Howard Cnty., Md., 12 F. Supp. 3d 780, 788 (D. Md. 2014) (holding that Price Waterhouse protects transgender individuals from discrimination for failing to conform to gender stereotypes). In Price Waterhouse, the Court proscribed employers evaluating employees "by assuming or insisting that they matched the stereotype associated with their group." Price Waterhouse, 490 U.S. at 251. Sarco alleges his membership in a protected class as a man who openly flouts gender norms with his attire and possesses an "effeminate" manner. Am. Compl., ECF No. 17, at 3. He emphasizes the intimate nature of the office and his personal refusal to hide his identity or conform with gender expectations. Specifically, he alleges that the office singled him out in giving him additional work that did not involve client interactions and that his superiors were more stringent in applying or adapting the office dress code to penalize his choices in clothing.

Count Two of Sarco's Amended Complaint also plausibly alleges examples of sexual orientation bias. Though after Bostock there is substantial overlap between the two theories of liability, the sexual orientation discrimination claim rests on some distinct facts. 140 S.Ct.

14

at 1749 (distinguishing when an "[e]mployer fires men who do not behave in a sufficiently masculine way" from when an "employer discriminates against women who are attracted to women"). While Count One rests on his perceived adherence to expectations of "masculinity," not his actual sexual orientation, Count Two hinges on demonstrating adverse action taken due to the mere fact of his homosexuality. Compare Wrightson v. Pizza Hut of America, Inc., 99 F.3d 138, 143-44 (4th Cir. 1996) (suggesting that a plaintiff's actual orientation was not relevant for the purposes of a gender stereotype claim) and Henderson v. Labor Finders of Virginia, Inc., No. 3:12CV600, 2013 WL 1352158, at *5 (E.D. Va. Apr. 2, 2013) (permitting a sex discrimination claim by a heterosexual male who was perceived to be effeminate and called a "woman" and a "faggot"), with Bostock, 140 S.Ct. at 1737 (finding sex discrimination for two plaintiffs whose employers terminated them after several years of employment because of their status as homosexuals, rather than any change in appearance or behavior). In support of this claim, Sarco points to the fact that his superiors made comments implying that, as a homosexual man, he did not care about the company's clients as service members. He states he believes this comment evinces bias against homosexuals as well as a belief that he is less committed to or less capable of conducting his duties. Additionally, Sarco cites instances of his boyfriend being denied an interview for a role for which he was qualified, his superiors' decision to cater a work event from Chick-fil-A, and his superior's hesitation to enter a bathroom when he was occupying it, among other examples.

To survive a motion to dismiss, Sarco must plausibly allege that he would not have been discriminated against or terminated but for his failure to conform with gender stereotypes and his sexual orientation. Title VII makes it unlawful for employers to base decisions "on a

15

mixture of legitimate and illegitimate considerations." <u>Price Waterhouse</u>, 490 U.S. at 241. Illegitimate considerations are those based on "impermissible classifications," for example, classifications based on a person's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 801 (1973). Accordingly, where a person experiences discrimination because of an impermissible classification such as sex, he or she is a member of a protected group for the purposes of Title VII. See <u>Wrightson</u>, 99 F.3d at 143 (holding that a heterosexual male could state a claim for sex discrimination).

Sarco demonstrates a plausible nexus between his treatment at work and his gender nonconforming behavior and sexual orientation. "[W]hile a plaintiff must allege specific facts to support his claim, 'intent may be pleaded generally (which is to say, in a conclusory fashion).'" <u>Henderson v. Labor Finders of Va., Inc.</u>, No. 3:12CV600, 2013 WL 1352158, at *6 (E.D. Va. Apr. 2, 2013) (quoting <u>Burks v. Raemisch</u>, 555 F.3d 592, 594 (7th Cir. 2009)); <u>see also</u> Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). In <u>Henderson</u>, the court found it sufficient that the plaintiff "alleged numerous examples of unfavorable employment actions taken against him as well as substantial iterations of conduct by [defendant] supervisors that could plausibly be viewed as discrimination on the basis of sex." <u>Henderson</u>, 2013 WL 1352158, at *5 (finding bigoted statements about plaintiff's alleged effeminate manner were sufficiently tied to denial of prestigious work). As in <u>Henderson</u>, Sarco alleges several iterations of conduct that could be viewed as sex discrimination as well as several instances of adverse employment action. Sarco claims different rules applied to him than to his coworkers, such as a prohibition on opening his window or receiving personal mail at the office and a requirement that his customer service

forms be monitored despite his long tenure. Ultimately, Sarco believes his termination was
due to AFBA's discrimination against him.

Moreover, Sarco points to pervasive gender norms in society and connects these
negative assumptions with how his superiors viewed his ability to perform, strengthening the
alleged nexus between his gender and the adverse employment action. The Fourth Circuit has
suggested that a backdrop of pervasive societal stereotypes can be taken into account in finding
the nexus between bias and adverse employment action. Parker v. Reema Consulting Servs.,
Inc., 915 F.3d 297, 303 (4th Cir.), cert. denied, 140 S. Ct. 115 (2019)  ("In short, because
'traditional negative stereotypes regarding the relationship between the advancement of
women in the workplace and their sexual behavior stubbornly persist in our society,' and 'these
stereotypes may cause superiors and coworkers to treat women in the workplace differently
from men,' it is plausibly alleged that Parker suffered harassment because she was a woman.")
(quoting Spain v. Gallegos, 26 F.3d 439, 448 (3d Cir. 1994)). Construing the Amended
Complaint in the light most favorable to Sarco, the court finds he makes plausible allegations
that his superiors believed that a homosexual man could not carry out the functions of a
customer service representative serving the military community and based on these beliefs,
took adverse employment action against him.

AFBA claims that Sarco's termination was not the result of bias, but because of his
unsatisfactory performance as a customer service representative. It argues that Sarco's
Amended Complaint itself acknowledges a valid performance reason for termination in stating
that he was confronted about his low response rate for handling customer service calls.
However, for the purposes of this motion, the court must accept as true Sarco's claim that he

improved his performance to the point where he held the second highest calls answered rate at the company, the very metric for which he was originally chastised. Coupled with the fact that AFBA had promised him a professional development session that was never given, the high praise he received when he was new to the job, as well as the allegedly low number of terminations at AFBA on the basis of performance, the court finds Sarco plausibly alleges that he was terminated due in part to AFBA's bias against him, rather than his performance.

Accordingly, the court **DENIES** AFBA's motion to dismiss the gender stereotype and sexual orientation discrimination claims, finding that it may consider activity that occurred outside of the statutory period as evidence of a pattern of behavior, and that Sarco has substantively met the Rule 12(b)(6) standard in pleading his two claims.

### D.

AFBA challenges Count Three of the Amended Complaint in part for failure to exhaust his administrative remedies, or in the alternative, for failure to state a claim of a hostile workplace environment.[1] Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's. . .sex." 42 U.S.C. § 2000e-2(a)(1). Title VII prohibits both "overt discrimination," known as "disparate treatment discrimination," and "practices that are fair in form, but discriminatory in operation," known as "disparate impact discrimination." Barnett, 1 F. Supp.

---

[1] AFBA also claims that the claim should be dismissed because the relevant conduct occurred primarily outside of the statutory time period of 300 days prior to the date the EEOC charge was filed. However, as the court discussed in the previous section, the Supreme Court has confirmed a court may consider conduct outside of the statutory period in assessing a hostile work environment claim as long as at least one act occurred within the period.

2d at 576 (internal quotation omitted) (quoting <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424, 431 (1971)). However, Title VII gives initial enforcement responsibility to the EEOC. A person alleging discrimination must first file an administrative charge with the EEOC within a certain time of the alleged unlawful act. <u>Chacko v. Patuxent Inst.</u>, 429 F.3d 505, 508 (4th Cir. 2005) (citing 42 U.S.C. § 2000e-5(e)(1)). A charge is well pled when it contains a written statement "sufficiently precise to identify the parties, and to describe generally the action or practices" about which the claimant complains. 29 C.F.R. § 1601.12(b).

AFBA claims that the hostile work environment claim goes beyond the scope of the EEOC charge, which detailed gender and sexual orientation discrimination, but not a hostile work environment. When an action is filed alleging Title VII violations, the EEOC charge "defines the scope of [plaintiff's] subsequent right to institute a civil suit" in federal court. <u>Smith v. First Union Nat'l Bank</u>, 202 F.3d 234, 247 (4th Cir. 2000). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of," 29 C.F.R. § 1601.12(b), such that a claimant's "employer is put on notice of the alleged violations." <u>Miles v. Dell, Inc.</u>, 429 F.3d 480, 491 (4th Cir. 2005). "If 'the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" <u>Chacko</u>, 429 F.3d at 509 (quoting <u>Dennis v. Cnty. of Fairfax</u>, 55 F.3d 151, 156 (4th Cir. 1995)). "[A] plaintiff fails to exhaust his administrative remedies where . . . his administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in his formal suit." <u>Id.</u> at 506.

19

However, "the exhaustion requirement should not become a tripwire for hapless plaintiffs." Sydnor v. Fairfax Cnty., Va., 681 F.3d 591, 594 (4th Cir. 2012). "EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." Alvarado v. Bd. of Trustees of Montgomery Cmty. Coll., 848 F.2d 457, 460 (4th Cir. 1988) (citing Kaplan v. Int'l Alliance of Theatrical & Stage Employees, 525 F.2d 1354, 1359 (9th Cir. 1975)). "'Title VII…sets up a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process.' It would be inconsistent with this framework to require untrained parties to provide a detailed essay to the EEOC in order to exhaust their administrative remedies." Sydnor, 681 F.3d at 594 (quoting Fed. Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008)).

Although Sarco did not mention a hostile work environment in his EEOC charge, he did allege facts reasonably related to a hostile work environment claim. Specifically, his charge states he has been bullied "throughout" his employment "because of [his] sexual orientation and because [he does] not conform to expected gender stereotypes." ECF No. 17-1, at 7-8. He describes several instances in which he was told by a superior that he "did not care about our soldiers and airmen," presumably because of his sexual orientation. A district court in the Fourth Circuit has denied summary judgment on a failure to exhaust administrative remedies argument when the plaintiff simply checked the boxes for "sex" discrimination and "retaliation" in her EEOC charge, without detailing more specifics in support of the allegation. Bennett v. Wilson Senior Care Inc., No. 4:17-CV-2798, 2019 WL 8403040, at *6 (D.S.C. Dec. 6, 2019), report and recommendation adopted sub nom. Bennett v. Wilson Senior Care, Inc., No. 4:17-CV-02798, 2020 WL 633741 (D.S.C. Feb. 11, 2020). This court has held that when

the EEOC charge and the subsequent investigation are sufficient to put the defendant on notice of claims brought and sufficient to allow the EEOC to attempt conciliation, the two goals of the administrative charge requirement, then the plaintiff can be found to have exhausted his administrative remedies. Broome, 2019 WL 6719495, at *7. The content of the EEOC charge provided ample notice to AFBA of the nature of the allegations against it.

### E.

However, while Sarco survives AFBA's motion to dismiss for failure to exhaust administrative remedies, he is unable to surmount the 12(b)(6) standard in making a substantive hostile work environment claim. A claim for a hostile work environment claim can survive upon a showing that the "harassment was so severe or pervasive as to alter the conditions of [Sarco's] employment." Perkins v. Int'l Paper Co., 936 F.3d 196, 208 (4th Cir. 2019) (quoting E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009). To state a claim for a hostile work environment based on gender or sex discrimination, Sarco must plausibly allege that the treatment was: (1) unwelcome; (2) based on gender; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) that there is some basis for imposing liability on the employer. See EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 313 (4th Cir. 2008); Mustafa v. Iancu, 313 F. Supp. 3d 684, 695 (E.D. Va. 2018). The third element, that a defendant's conduct be "severe and pervasive," "has both subjective and objective components." Sunbelt Rentals, Inc., 521 F.3d at 315 (quoting Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003) (en banc)). Sarco did not plead facts sufficient to make plausible that AFBA's discriminatory conduct was "severe and pervasive."

21

Sarco may have felt the environment was subjectively hostile, but the facts pled do not clear the "high bar" of being objectively hostile. Sunbelt Rentals, Inc., 521 F.3d at 315. To determine if a work environment was objectively hostile, the court must look to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating rather than a mere offensive utterance, whether it unreasonably interferes with work performance, and what psychological harm resulted. See Harris v. Forklift Sys., Inc., 510 U.S. 17, 21-23 (1993); Conner v. Schrader-Bridgeport Int'l, Inc., 227 F.3d 179, 193 (4th Cir. 2000). This standard is a "demanding" one. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). No one is guaranteed "refinement and sophistication" in their interactions at work. Martin v. Merck & Co., 446 F. Supp. 2d 615, 629 (W.D. Va. 2006). Rather, they are protected only from "harassing behavior that is so severe or pervasive as to render the workplace objectively hostile or abusive." Hartsell v. Duplex Prods., Inc., 123 F.3d 766, 773 (4th Cir. 1997). Rude and disrespectful comments resting on gender stereotypes that do not involve "frequent and pervasive slurs and insults based on his sex, culminating in threats of violence" are insufficient to constitute an actionable claim. Dumbaugh v. Univ. of Richmond, No. 3:19-CV-57, 2019 WL 4307872, at *3 (E.D. Va. Sept. 11, 2019) (quoting Henderson, 2013 WL 1352158, at *5, 8).

Sarco provides specific examples of comments that could be perceived as offensive as well as decisions made by superiors that could be perceived as adverse. However, he does not plead bigoted statements sufficiently severe or frequent to meet the objectively hostile standard required for a hostile work environment claim. Nor does he claim receiving physical

threats, experiencing an impact to his ability to carry out his responsibilities, or suffering an injury to his psychological well-being, which could have demonstrated the severity of the discrimination as implied by the magnitude of its effect. Accordingly, the court **DISMISSES** his hostile work environment claim, finding it does not survive a Rule 12(b)(6) motion.[2]

### IV.

For the foregoing reasons, the court **GRANTS in part** and **DENIES in part** AFBA's motion to dismiss. Sarco may proceed on his gender nonconformity discrimination and sexual orientation discrimination claims. However, the court finds the hostile work environment claim, even as amended, does not pass muster and thereby **DISMISSES with prejudice** that claim.

An appropriate order will be entered.

Entered: September 10, 2020

Michael F. Urbanski
Chief United States District Judge

---

[2] Moreover, Sarco has already exercised the opportunity to amend his complaint once in the face of a previous motion to dismiss the hostile work environment claim on the same grounds. Before the court is the Amended Complaint, which still fails to meet the Rule 12(b)(6) standard. Therefore, the court finds granting him leave to amend the complaint again would be a futile exercise.